IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| POLLY BREWER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED WISCONSIN INSURANCE<br>COMPANY d/b/a "UNITED HEARTLAND,"<br>a division of ACCIDENT FUND HOLDINGS,<br>INC., a wholly-owned subsidiary of BLUE<br>CROSS BLUE SHIELD OF MICHIGAN,<br><br>Defendant. | No. 3:12-cv-01110<br><br>Judge Nixon<br>Magistrate Judge Bryant<br><br>JURY DEMAND |

## ORDER

Pending before the Court is Defendant United Wisconsin Insurance Company d/b/a United Heartland's ("United Heartland") Partial Motion to Dismiss ("Motion") (Doc. No. 14), filed with a Memorandum in Support (Doc. No. 15). Plaintiff Polly Brewer filed a Response in Opposition ("Response") (Doc. No. 25), to which United Heartland filed a Reply (Doc. No. 28). For the reasons given below, Defendant's Motion is **GRANTED**.

I. BACKGROUND

*A. Factual Background*[1]

Plaintiff Polly Brewer applied for a Loss Control Consultant position with Defendant United Heartland in 2012. Plaintiff first interviewed over the phone with Defendant's Loss Control Manager and Regional Director on or about July 23, 2012, during which she disclosed that her then-current position as a Multi-line Loss Controller for a different employer involved significant regional travel. The interviewers informed Plaintiff that the Loss Control Consultant

---

[1] All facts are drawn from Plaintiff's First Amended Complaint (Doc. No. 11), unless otherwise noted.

1

position would require significant regional travel as well, and asked to meet Plaintiff in person for second interview on August 2, 2012. On August 9, 2012, the initial interviewers plus Defendant's Nashville Loss Control Consultant met Plaintiff for dinner and expressed that Plaintiff's experience with and enjoyment of significant travel fit well with Defendant's needs. On August 24, 2012, Defendant's Corporate Loss Control Director interviewed Plaintiff in person.

On August 28, 2012, Defendant's Corporate Human Resources official Jennifer Romero called Plaintiff and offered her the Loss Control Consultant position. Plaintiff accepted over the phone, and was told that a written job offer would follow. Later that same day, Plaintiff signed the written offer, which included an acceptance form and a notice that the offer was contingent on successful completion of a background check. When Plaintiff called Romero to inform her that Plaintiff had signed the acceptance form, Romero told her that she would also need to sign a background check form. Romero assured Plaintiff that the background check was not likely to result in any problems and informed her that it would likely take five to seven days to complete. On August 29, 2012, Plaintiff signed the background check authorization form, on which she disclosed to Defendant her age for the first time.

On August 30, 2012, Romero called Plaintiff to retract the job offer. Plaintiff insisted that she had already accepted the offer, and told Romero that she had already resigned her current position at Romero's suggestion. After informing Plaintiff that she would discuss the matter "with counsel," Romero called Plaintiff on August 31, 2012, and informed her that Defendant was withdrawing the offer because of Plaintiff's "commitment to the position." That same day, Romero sent Plaintiff a letter withdrawing the offer, stating that the offer was contingent on a background check and that Plaintiff had "brought concerns regarding travel

requirements and commitment to the position," which caused Defendant to "no longer consider [Plaintiff] to be the best match for the position."

Plaintiff admits that she looks younger than her age, which was not disclosed until after the interview process when she accepted the position. Plaintiff alleges that Defendant's stated rationale for termination regarding her travel concerns and commitment issues was pretext to conceal the true reason for Plaintiff's termination—her age. Essentially, Plaintiff alleges that Defendant fired her because of its discriminatory belief that Plaintiff was too old to handle the significant travel requirements of the Loss Control Consultant position.

Among other claims, Plaintiff brought a cause of action for False and Deceptive Representation of Employment under Tenn. Code Ann. § 50-1-102. Defendant moves to dismiss this cause of action with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 15 at 1.)

### B. Procedural Background

On October 26, 2012, Plaintiff filed a Complaint (Doc. No. 1) in this case, and later filed her First Amended Complaint (Doc. No. 11) on December 31, 2012. On January 9, 2013, Defendant filed a Partial Motion to Dismiss (Doc. No. 14) Plaintiff's claim under Tenn. Code. Ann. § 50-1-102, pursuant to Fed. R. Civ. P. 12(b)(6). On January 24, 2013, Plaintiff filed a Response in Opposition to Defendant's Partial Motion to Dismiss (Doc. No. 25,) to which Defendant filed a Reply (Doc. No. 28) on February 11, 2013.

## II. LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 546).

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

## III. ANALYSIS

Defendant argues two reasons why Plaintiff's claim under Tenn. Code Ann. § 50-1-102 should be dismissed: (1) because the statute does not cover the type of misrepresentation alleged (Doc. No. 15 at 13–14), and (2) because Plaintiff was not "brought into this state" or "induced to go from one place to another in this state" (*id.* at 6–12). The Court addresses Defendant's arguments in turn.

### A. Misrepresentation in Claims under Tennessee Code Annotated § 50-1-102

Defendant contends that the only alleged misrepresentation in the Complaint concerns its reasons for rescinding the employment offer extended to Plaintiff, which does not fit within one of the four specific categories of misrepresentation proscribed by the statute. (*Id.* at 14.) Plaintiff responds that her Complaint adequately describes the representations Defendant made

4

to her regarding the "kind and character of the work to be done," and thus adequately pleads a claim of false or deceptive representations under the statute. (Doc. No. 25 at 4.)

Tenn. Code Ann. § 50-1-102(c)(1) creates a cause of action for workers who are "influenced, induced, or persuaded" to come into the state of Tennessee to work or go from one place to another within the state by false or deceptive representations, false advertising, or false pretenses. Tenn. Code Ann. § 50-1-102(c)(1) (2013). To be actionable under the statute, the false or deceptive representation must concern: (1) the kind and character of the work to be done, (2) the amount and character of compensation to be paid for the work, (3) the sanitary or other conditions of the employment, or (4) the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement. *Id.* § 50-1-102(a)(1). A plaintiff is required to prove only one of the four types of misrepresentation listed above to succeed on a claim under the statute. *See id.*

All four types of misrepresentation detailed in Tenn. Code Ann. § 50-1-102 pertain to conditions of actual employment. While Tennessee courts have not had much opportunity to interpret these provisions, the Tennessee Court of Appeals did uphold a verdict granting a plaintiff damages under the statute in *Risher v. Cherokee Buick-Pontiac-Oldsmobile-GMC Truck, LLC*, No. E2002-1644-COA-R3-CV, 2003 WL 21755055 (Tenn. Ct. App. July 28, 2013). In that case the court found the plaintiff had offered satisfactory evidence concerning two of the statute's four proscribed types of misrepresentation: "the kind and character of the work to be done" and "the amount and character of the compensation to be paid." *Id.* at *6–7. Regarding "the kind and character of work to be done" provision, the court held that the defendants' representation that the plaintiff would be hired as a general manager before subsequently employing him in a different position amounted to a misrepresentation in the kind or character of

5

the work the plaintiff would be doing. *Id.* As to "the amount and character of compensation to be paid" provision, the court found the plaintiff's actual payment during his employment was substantially less than the amount agreed upon prior to employment. *Id.* at *7. As such, the plaintiff in *Risher* did not establish either type of representation as false or deceptive until after he began working and experienced conditions materially different than what the defendants had represented.

By contrast, here, Plaintiff alleges that Defendant simply did not allow her to begin working as a Loss Control Consultant, even after a series of interviews and correspondence that culminated in Defendant's offer and her acceptance of the position. (Doc. No. 11 ¶¶ 8–16, 21–22, 24.) Specifically, Plaintiff argues that Tenn. Code Ann. § 50-1-102 applies because her allegations regarding the "the kind of work she was denied" and "the nature of the inducement" fall within the statute's category of misrepresentation concerning "the kind and character of work to be done." (Doc. No. 25 at 4.)

In considering the motion to dismiss Plaintiff's claim under the statute, the Court must evaluate only alleged instances of false or deceptive representations, false advertising, or false pretenses. *See* Tenn. Code Ann. § 50-1-102(c)(1). The parties agree that they discussed the Loss Control Consultant job in detail, as Defendant concedes for the purposes of this motion that it extensively described the position in its interviews and correspondence with Plaintiff. (Doc. No. 15 at 1–3.) However, Plaintiff does not allege that Defendant misrepresented the substance of the position in their discussions. Instead, this case arises out of Defendant's alleged failure to follow through on its offer of employment after Plaintiff disclosed her age. (Doc. No. 11 ¶ 29.) These circumstances stand in stark contrast with the successful False and Deceptive Representations of Employment claim in *Risher*. Whereas the employee in *Risher* experienced

the difference between promised and actual employment over several months while working for the employer, here the Plaintiff alleges termination before her employment began. *Compare Risher*, 2003 WL 21755055 at *6–*7, *with* (Doc. No. 11 ¶¶ 21–22, 24). Plaintiff was therefore unable to reasonably evaluate whether Defendant's descriptions of the Loss Control Consultant position conformed to the position's actual character as she never performed any work in the position.

Plaintiff does allege that Defendant misrepresented the "true reason" for her termination before she started working. (Doc. No. 11 at ¶ 29.) Plaintiff alleges that she was fired because of her age, and that Defendant's stated rationale—"concerns regarding travel requirements" and "commitment to the position"—was pretext. (*Id.*) Apart from Defendant's stated rationale for termination, however, the Court finds Plaintiff has made no other allegations of misrepresentation in her Complaint. Further, the only alleged misrepresentation is not of a type covered in the statute. Thus, as the Complaint does not allege at least one of the four types of misrepresentation prohibited under Tenn. Code Ann. § 50-1-102, the Court finds Plaintiff has failed to adequately state a claim for relief under the statute.

Plaintiff requests that, should the Court dismiss her cause of action under Tenn. Code Ann. § 50-1-102, the dismissal be "without prejudice" so that she may amend her Complaint to offer further details to adequately state her claim. (Doc. No. 25 at 4.) The Court declines this request as the statute—addressing only conditions of actual employment—does not provide relief for alleged discriminatory termination taking place prior to the commencement of a person's employment. Because Plaintiff was not given the opportunity to begin working for Defendant before the alleged termination, the Court finds no possible amendment could cure the deficiency in her claim under Tenn. Code Ann. § 50-1-102.

### B. *Movement Requirement under Tennessee Code Annotated § 50-1-102*

Defendant also argues that Plaintiff's claim should be dismissed because Tenn. Code Ann. § 50-1-102(e) limits the statute's applicability to people that geographically relocate into the state or within the state. (Doc. No. 15 at 7–8.) Plaintiff responds that Defendant's interpretation of the statutory language is too narrow and that "to change from one place to another in this state" could mean a change in place of employment as easily as a change in residence. (Doc. No. 25 at 2–3.) Because the Court has determined that Plaintiff's Complaint fails to adequately plead a cause of action under the statute, the Court declines to reach this issue.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion is **GRANTED**; Plaintiff's state law claim under Tenn. Code Ann. § 50-1-102 is **DISMISSED**. Plaintiff's remaining claims are unaffected by this Order.

It is so ORDERED.

Entered this the \_\_\_12\_\_\_ day of September, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT